EMERSON ELECTRIC MFG. CO. v. VAN NORT BROS. ELECTRIC CO.

(Circuit Court, E. D. Missouri, E. D.   June 21, 1902.)

No. 4,311.

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

A combination of elements in a single device, which by their joint and co-operating action produce a new and useful result, or an old result in a more facile, economical, and efficient way, constitutes invention within the meaning of the patent law, notwithstanding the fact that each of the elements separately considered, or in other combinations, was old, and well known in the art.

2. SAME—ANTICIPATION—ORAL TESTIMONY TO ESTABLISH.

The oral testimony of witnesses speaking from memory only in respect to past transactions and old structures claimed to anticipate a patented device, but which are not produced, is very unreliable, and it must be so clear and satisfactory as to convince the court beyond a reasonable doubt before it will be accepted as establishing anticipation.

3. SAME—INFRINGEMENT—LUBRICATED BEARINGS.

The Meston patent, No. 622,247, for an improvement in lubricated bearings, designed specially for use in connection with electric ceiling fan motors, consisting of a combination of devices, the principal one of which is a spiral groove in the hub of the armature opening into an oil cup at its lower end, and extending up the bearing to a reservoir at its upper end in such a way that when the fan is in motion the oil is forced up the groove from the cup on the principle of the Archimedean screw, lubricating the shaft, and the excess being discharged into the reservoir, was not anticipated, and shows a combination, which, although the elements were old, discloses patentable invention. Claims 3, 5, 6, and 7 also *held* infringed.

In Equity. Suit for infringement of letters patent No. 622,247, for a lubricated bearing for electric ceiling fan motors, issued to Charles R. Meston April 4, 1899.

Paul Bakewell, F. R. Cornwall, and J. M. Holmes, for complainant.
Albert H. Walker and Peers, Femmer & Peers, for defendant.

ADAMS, District Judge. This is a suit to restrain the infringement of claims 3, 5, 6, and 7 of letters patent of the United States No. 622,247, dated April 4, 1889, granted to complainant's assignor, Charles R. Meston, for an improvement in lubricated bearings designed specially for use in connection with electric ceiling fan motors. The defenses are want of novelty and noninfringement. The complainant's invention consists of a method of lubricating automatically the vertical shaft around which the armature of a pendant electric fan motor revolves. The essential features of the invention, as described in the specification, are "to provide a rotary element [the hub of the armature] with a spiral groove, whose lower end opens into an oil cup, and whose upper end opens into a reservoir, whereby the rotation of said element in the proper direction forces the lubricant upwardly around the shaft, on the principle of an Archimedean screw." The method of operation is to supply the lower oil cup, which is integral with the hub, with oil sufficient to submerge the lower bearings of the hub and the lower end of the spiral groove which forms a continuous channel in the armature bearing, around the shaft from the lower

or central portion of the oil cup extending upwardly to the reservoir at the top of the hub. When the fan is put in motion, the oil is forced by the centrifugal action of the rotating cup up the channel on the principle of the Archimedean screw, lubricating the shaft as it goes, and any superfluity finds its way into the upper reservoir. When the fan is stopped, the oil by gravity falls back through the channel into the lower oil cup, ready for repeated service when the fan is again started. To avoid friction, the lower end of the revolving hub rests upon a ball bearing, consisting of a series of hardened steel balls, which travel or rest upon an annular-shaped track placed in the bottom of the oil cup. The claims alleged to be infringed by the defendant are as follows:

"(3) The combination, with a rotary element having a spiral groove, an oil cup, into which the lower end of said spiral groove opens, and a reservoir into which the upper end of said spiral groove leads, for receiving and retaining the oil at a point above the oil cup while the rotary element is operating; substantially as described."

"(5) The combination, with a fixed shaft of a hub mounted thereon, a reservoir formed at the upper end of the hub for receiving and retaining the oil at a point above the oil cup while the rotary element is operating, an oil cup surrounding the lower end of the hub, and there being an internal spiral groove formed in the hub, whereby, when said hub is rotated, lubricant is forced upwardly around the shaft and into the reservoir; substantially as described.

"(6) The combination, with a fixed shaft, a rotating hub mounted thereon, a reservoir arranged on top of said hub, an oil cup arranged at the bottom of the hub, there being an internal spiral groove in the hub for elevating the oil from the oil cup to the reservoir when the hub is rotating, said groove also permitting the oil to pass from the reservoir to the oil cup when the hub is not rotating, and a ball bearing for said hub, located below the lowest oil line of the oil cup; substantially as described.

"(7) The combination, with a rotary element formed with a spiral groove, of an oil cup into which the lower end of said spiral groove opens, and a reservoir into which the upper end of said spiral groove leads, and a ball bearing for said rotary element, which ball bearing is arranged in the oil cup and under the oil line thereof; substantially as described."

The device made by these combinations is undoubtedly highly useful and meritorious. It has gone into very general use, and has largely superseded other devices which were employed before its discovery. In fact, defendant's able counsel concedes its merit, and, as I understand from his statement of defenses and argument, concedes its patentability generally, but contends only that Meston, complainant's assignor, was not the original and first inventor of it. This contention presents the main question for determination. It must be conceded at the outset that the separate elements of the claims in question were not new with Meston. The shaft, the hub, the oil cup, the reservoir, the spiral groove, and the ball bearing were each and all well known before his invention was patented. It must also be conceded that the method of lubricating a vertical shaft by the dripping of oil operating by gravity from a conveniently located overhanging oil cup has long been practiced, and that the lubricating of a vertical shaft revolving in a close-fitting bearing, with oil taken up from a lower surrounding oil cup, according to the principle of capillary attraction when the shaft is put in motion, is also an old expedient. But the fact that the elements were all old is of no consequence, provided their combination, as

found in the claims in question, was new and original, and produced a new and useful result.

Complainant starts with a prima facie case of novelty and invention arising from the grant of the patent, but defendant contends that the prior art, as disclosed in certain patented and unpatented structures, shows a full and complete anticipation of complainant's invention; and this contention must now be examined. The Roberts patent, No. 42,308, granted April 12, 1864, was for an improvement in lubricating spindles. It discloses an upper and lower oil cup surrounding the spindle or shaft, and describes the process of oiling the shaft as it revolves, on the principle of capillary attraction. It shows no spiral groove forming a channel in the hub, beginning in the lower oil cup and ending in the upper one, and describes no principle of operation like that of the Archimedean screw. In fact the elements of the Roberts patent could not operate on that principle. Neither does it disclose the ball bearing in any combination; much less, in the combination of elements disclosed by complainant's patent. The Bartlett patent, No. 47,271, granted April 18, 1865, is also for an improvement in lubricating spindles. It shows a spiral groove, but not in the rotary element. The groove of the Bartlett patent is in the stationary casing surrounding the rotary element. It does not show the oil cup or reservoir or ball bearings of the Meston patent, and it does not operate on the principle of an Archimedean screw. On the other hand, the operation of the device of the patent is to keep a constant current of oil flowing from the place of ingress down a vertical groove, thence into a horizontal groove, thence through a hole into a spiral groove, thence up the spiral groove to the place of original ingress. All that is claimed for this patent by learned counsel for defendant is that it shows the spiral groove in the stationary casing. The Diehl patents, Nos. 414,757 and 537,679, granted November 12, 1889, and April 16, 1895, show a ball bearing in an oil cup under the rotary hub of an armature carrier of a fan motor, and also an upper and lower oil cup, in somewhat different combination than is elsewhere disclosed. But neither of these patents shows any spiral groove channel in the bearing or elsewhere, intended to serve the purpose of the Meston patent. They operate on a totally different principle, and embody no such combination of elements as would permit of the operation of the Meston device. The Beers patent, No. 481,646, granted August 30, 1892, shows an upper and lower oil chamber and a ball bearing for the hub of the armature, but shows no spiral groove in the bearing, and no arrangement of parts to permit the lifting of the oil from a lower to a higher oil chamber. It only shows a device for pouring oil into an upper chamber so related to the armature bearing that it will permit the oil to drop or seep through the bearing and drip into the lower chamber as a reservoir for such oil as may escape into it, and also as an ornamental finish to the structure. Thus the defendant claims to find in the Roberts and second Diehl patents the upper and lower oil cups, in the Bartlett patent the spiral groove, and in the first Diehl patent the ball bearing of the patent in suit, but it finds in no one of them all the elements of the patent in suit. Neither does it find in any one of them the same or kindred principle of operation dis-

closed by the patent in suit. But counsel contends that the information disclosed by these separate patents touching the utility of the several elements employed by Meston is sufficient to negative his pretensions to novelty and invention. The supreme court of the United States in the case of Bates v. Coe, 98 U. S. 31, 48, 25 L. Ed. 68, in treating of a kindred question, says:

"Where the thing patented is an entirety, consisting of a single device or combination of old elements incapable of division or separate use, the respondent cannot escape the charge of infringement by alleging or proving that a part of the entire thing is found in one prior patent or printed publication or machine, and another part in another prior exhibit, and still another part in a third one, and from the three, or any greater number of such exhibits, draw the conclusion that the patentee is not the original and first inventor of the patented improvement."

The invention of the patent under consideration is the combination in one device of all the three elements so alleged to have been shown by prior patents in such a way and manner as to produce a new and useful result, or at least to produce the old result in a more facile, economical, and efficient way. If the combination produces such result by the joint and co-operating action of the elements combined, even if they are old, it is invention within the meaning of the patent law, notwithstanding the fact that each of the elements separately considered or in other combinations were old and well known to the art. Brinkerhoff v. Aloe, 146 U. S. 515, 13 Sup. Ct. 22, 36 L. Ed. 1068. From the foregoing considerations it is clear that any of the prior patents which disclose only single elements of the patent in suit, co-operating with its associate member or members on a different principle of action, cannot avail the defendant as anticipations of the invention of Meston.

It is next contended that the Conklin patent, No. 511,196, granted December 19, 1893, is a full anticipation of Meston's invention. This patent relates directly to the same utility as Meston's patent. It is for an improvement in electric motors, and, among other things, describes and claims lubricating mechanism. It shows a rotary element, the hub of the armature, intended to revolve about a fixed vertical shaft; an upper and lower oil cup, but no spiral groove in the rotary element leading from one cup into the other. It shows a collar fixed to the lower end of the shaft to support the revolving hub, with a washer on the collar, upon which the revolving hub directly bears. This hub weighs about 26 pounds, and in revolving about the shaft bears heavily against the supporting collar or intervening washer. The joint of this bearing is inside of the lower oil cup, submerged with oil, and is necessarily tight. It is claimed by defendant's counsel that this is the equivalent of the Meston device, susceptible of the same operation, and producing the same results. I am unable to agree with this view. A consideration of the specification and claims of the Conklin patent discloses that the patentee himself never intended any operative function like that shown and fully described in the Meston patent, namely, the automatic lubrication of the shaft, accomplished by rapid revolutions of the rotary element containing a spiral groove opening into the lower fountain of oil, and extending the whole length

of the hub, and ending in the upper reservoir, on the principle of the Archimedean screw. He says, in the specification, as follows:

"F indicates a combined oil cup and support for the fan blades that incloses the lower portion of the shaft bearing by a screwed threaded engagement with the hub, B'', of the supporting blade. Fig. 2 illustrates the oil chamber within this part, as it does also the oil chamber, c, higher up on the shaft; and it will be noted that the bearing of the shaft will receive an adequate supply of oil by this arrangement of the oil chambers."

He nowhere describes how the shaft will be oiled, and certainly does not suggest that the oil will be taken up from the lower oil cup, and forced by centrifugal action along a channel made by spiral grooves up the shaft; but his specification and claims, in my opinion, clearly indicate that his method of operation was to use the channels, c, c, leading from the upper oil cup into the shaft as a means for introducing the oil to the bearing, after which the oil would lubricate the shaft in its descent, and whatever might escape from the shaft through the joint at the bottom would drip into the lower oil cup, thereby serving the purpose of lubricating the lower joint or bearing of the hub on its supporting shoulder. Notwithstanding the foregoing obvious purposes shown by the patentee, Conklin, counsel for defendant contends that his patent discloses all the elements of the patent in suit, or at least their mechanical equivalents. He says that the oil in the lower oil cup submerges the bearing in the Conklin patent just as it does in the Meston patent, and that, although there is no ball bearing in the Conklin patent, and although there is no spiral groove on the rotary member, yet the gyratory motion occasioned by the rapid revolutions of the hub around the shaft so opens up the joint between the hub of the armature and shoulder that it will permit the oil to be forced through the joint, and, when so forced through, the rapid revolution of the hub will carry the oil up the shaft, and thus accomplish the same result as is accomplished by the Meston device. To this it may be answered that, even if the gyratory action of the machine would so open up the joint as to let any oil through to the shaft, the operation of oiling the shaft would be upon the principle of capillary attraction, and not that of the Archimedean screw, as claimed in the Meston patent. It seems to me also that the opening of the joint in the manner suggested is an accidental operation of the machine, and is clearly not the result of premeditation or design. It is scarcely conceivable that any such considerable quantity of oil would find its way through the tight joint in question as to afford a reliable and adequate supply for so lubricating the shaft as to keep it in that constant state of copious lubrication requisite for efficient action. Not only so, but in my opinion the experiments made as shown in the proof demonstrate that no such sufficient quantity of oil could work its way through the tight joint as to lubricate the shaft at all before it became heated by the revolutionary motion. On the whole, I am clearly of the opinion that the Conklin patent neither contemplated the operation contended for nor does it disclose elements that would fairly and reasonably permit of such operation. On the other hand, the specification, the claims, and the drawings all clearly show that the purpose and method of operation of that patent was to use the upper oil cup as the fountain

of supply, and to accomplish the purpose of lubricating the shaft by permitting the oil to drip through the opening, c, c, of the patent, from the upper oil cup to the shaft.

This disposes of all the patented structures deemed worthy of consideration, and leads to the result that none of them anticipate the invention disclosed by the Meston patent. But it is contended by defendant's counsel that there were certain unpatented structures in existence and use disclosing the patented device of complainant before Meston applied for his patent. The first of these is what is called the "Todd Motor." The proof shows that the Dayton Fan Motor Company is the manufacturer of the alleged infringing device of the defendant, and is conducting the defense of this suit at its own expense. The Dayton Company was the assignee and owner of the Conklin patent, already considered. This was applied for in May, 1893, and granted in December, 1893. About six weeks before the application for the Conklin patent, the Dayton Company, under the direction of Conklin, the patentee, manufactured the Todd motor, which corresponds with the device of the Conklin patent in every particular, except that it has a spiral groove in the rotary member or hub of the armature, while the device of the Conklin patent has no such groove. The Todd motor has the same tight joint between the lower end of the hub of the armature and the shoulder on the end of the shaft as is found in the Conklin patent, and the spiral groove does not open into the lower oil cup surrounding this joint, but ends at the joint itself. For reasons already stated when considering the Conklin patent, there was evidently no preconceived design or purpose in making the Todd motor to form a continuous channel from the lower oil cup to the upper one. The groove in question was doubtless made in the Todd structure to facilitate the downflowing of the oil from the upper oil cup along the shaft. I am the more persuaded of this for the reason that Conklin, in making the drawings and specification for his own patent a few weeks later, gave no heed or attention to the groove, doubtless regarding it as an obvious expedient to facilitate the downflow of the oil. His ignoring of it in his subsequent patent shows that he never intended that it should perform the radically different and remarkable function now claimed for it. Not only was there no such intention, but, in my opinion, for the reasons stated while discussing the Conklin patent, the elements of the Todd device would not permit of any such functional operation. The revolution of the oil cup at one with the revolving hub would not so carry the oil through the tight joint as to force it up the spiral groove, and thus accomplish the lubrication of the shaft on the principle of the Archimedean screw.

The Postoffice Exchange motor is another of the unpatented structures relied upon by defendant as an anticipation. This motor is in every important particular, for the purposes of this case, like the Todd motor. It was made by the Dayton Company after the Conklin patent was secured, and has the same tight joint between the hub of the revolving armature and the shoulder on the end of the shaft. If any substantial amount of oil could be forced through the joint of this motor, it would be an accidental operation of the structure, and not the one intended. In my opinion, the structure never was, and never

could be, operated successfully on the principle of the Archimedean screw. The whole structure plainly enough shows that it was intended to be and was operated by filling the upper oil cup, permitting the oil to seep through between the bearing and the shaft, lubricating the same on the principle of gravity, and dripping, if at all, into the lower oil cup. The Cash Register motor is another of these unpatented structures. This motor, as shown by the exhibits and drawings in evidence, in my opinion, utterly fails to disclose the invention of complainant's patent. It shows no spiral groove in the rotary member; in fact shows no groove at all. According to the proof, this motor was a failure from the beginning, and was quickly abandoned by the Dayton Company, which made it. Thus far I have treated the Todd motor, the Postoffice Exchange motor, and the Cash Register motor as if their existence in the very form shown by the exhibits and drawings, prior to the filing of the application by Meston for his patent, was fully established by the proof. I am not insensible to the rule laid down in Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821, Cantrell v. Wallick, 117 U. S. 689, 696, 6 Sup. Ct. 970, 29 L. Ed. 1017, and the Barbed-Wire Patent, 143 U. S. 275, 285, 12 Sup. Ct. 450, 36 L. Ed. 161, which is invoked by complainant's counsel, to the effect that a patent cannot be invalidated by alleged prior invention or use unless the proof establishes such prior invention or use beyond a reasonable doubt. But I have not deemed it necessary, in the view already expressed of their construction and functional operation, to critically consider the evidence relating to the time when these exhibits were first made, or when any of their elements were embodied in them. I have carefully considered all the evidence relating to the so-called "Lorenz tracing," which is claimed by defendant's counsel to accurately represent (with one immaterial variation) a vertical cross-section of the Cash Register motor as it was originally constructed in 1895. This drawing shows all the elements of complainant's invention, and, if the device represented by the drawing to have been made in 1895 is authenticated beyond a reasonable doubt, it would refute complainant's pretensions to originality and invention in the Meston device. The present appearance of the Cash Register motor itself and the drawings representing the same fail, as already observed, to show the invention of complainant's patent. They disclose no spiral groove at all in the armature bearing; but it is contended that, as originally constructed in 1895, it had the spiral groove, and that in 1896 it was changed by the Dayton Company from its original condition, with spiral groove and ball bearings, to the condition shown in the exhibit and drawing, without any spiral groove at all. The evidence of this change is found alone in the testimony of witnesses based upon their recollection of past events. The original motor so claimed to have been made in 1895 is not produced. Neither are any original working drawings, from which the motor was made, produced. Certain witnesses testify about the change. These are the president, secretary, general foreman, and the electrician of the Dayton Company. Only two of them, however,—the electrician and foreman,—pretend to have witnessed the actual making of the change; but their testimony is so uncertain and evasive on the important question as to whether

a spiral groove originally existed in the bearings of the hub, and as to what real change was made in 1896, that I am unable to find, even by a preponderance of evidence, and much less by evidence that satisfies beyond a reasonable doubt, that the original Cash Register motor had a spiral groove, as represented in the so-called "Lorenz drawing." All the testimony identifying Lorenz's drawing with any original structure containing each and all the elements represented by the drawing is given by witnesses in the employ of the Dayton Company, which is the real defendant to this suit, and is too vague and unsatisfactory to be convincing. Moreover, the witnesses are testifying about past transactions and old structures from memory only. Such testimony is very unreliable. As said by this court in Williams Patent Crusher & Pulverizer Co. v. St. Louis Pulverizer Co. (C. C.) 104 Fed. 795, 801:

"The novelty of a device often depends upon a careful and discriminating examination of small and apparently inconsequential differences in construction between it and the prior art; and to permit witnesses to institute comparisons in their own minds, and state the result of such comparisons in general terms, to the effect that the unseen and unproduced machine operates in the same way as the machine of the patent, * * * and that the unproduced machine accomplishes the same results as the machine of the patent, would, if tolerated as satisfactory evidence, open the door to mistake, fraud, and deception."

The supreme court of the United States, in the Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 450, 36 L. Ed. 161, in dealing with this character of evidence, says as follows:

"We have now to deal with certain unpatented devices claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond reasonable doubt."

Applying the well-settled rule indicated in the foregoing quotations, I unhesitatingly reach the conclusion that the existence of no machine represented by the Lorenz drawing has been so established by the proof as to create an anticipation of the invention of the Meston device.

The grant of the patent to Meston is prima facie evidence of novelty and invention, and I am unable to find anything, either in the patented or unpatented structures relied upon by defendant as anticipations, to disturb the prima facie case made by the patent itself.

The record in this case shows that considerable progress had been made in the art of lubricating vertical shafts before complainant's patent was granted. One inventor had discovered the utility of the revolving oil cup, another had discovered the utility of the ball bearing, another had discovered the utility of the spiral groove; and these different elements had been employed separately, or one had been combined with another in such a way as to produce certain fair results; but, in my opinion, no one had discovered the combination of the

claims in question in this case prior to Meston. He gave the finishing and vitalizing touch to former crude beginnings. He brought success out of comparative failures, and produced a combination not only practically new in itself, but which has produced new and very beneficial results. So true is this that the defendant, instead of using either the Conklin device or any of the other devices shown by the prior art, to all intents and purposes adopted the complainant's invention, and is now manufacturing and selling fan motors involving that invention. The facts of this case, in my opinion, bring it within the principles announced in the cases of Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, Deere & Co. v. Rock Island Plow Co., 28 C. C. A. 308, 84 Fed. 171, and Griswold v. Harker, 10 C. C. A. 435, 62 Fed. 389. The chief feature of complainant's device is the spiral groove or channel opening into the lower oil cup and extending up the bearing to the upper reservoir in such way as to permit the raising of oil on the principle of the Archimedean screw. This feature is the important element of each claim in controversy, and co-operates with the other elements of each claim in such way as to make an effective machine. I therefore have concluded that each of the four claims in question involves invention, and is valid. There is practically no dispute about infringement. The defendant's device involves the invention of each and all the claims.

A decree will be entered for complainant.