**KAMMERER CORPORATION et al. v.
McCULLOUGH et al.**

No. 751-Y.

District Court, S. D. California, Central Division.

June 7, 1941.

214

Lyon & Lyon, Leonard S. Lyon, and Henry S. Richmond, all of Los Angeles, Cal., for plaintiffs.

R. Welton Whann and Robert M. Mc-Manigal, both of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

This cause, in equity, was originally brought by the owners of Letters Patent No. 1,277,600, 1,625,391 and 1,625,414,—all devices relating to tools for cutting and removing pipe from wells. Before the trial, the case was consolidated with another one pending before me between the same parties and relating to Letters Patent No. 1,625,391 and 1,625,414 only.

At the trial, Letters Patent No. 1,277,-600 and No. 1,625,414 were eliminated by the plaintiffs. So that the only issues tried were the validity and infringement of Letters Patent No. 1,625,391.

On the evidence before me, I am of the view that the patent covered by Letters Patent No. 1,625,391, issued April 19, 1927, to Reilly and Stone, is good and valid in law and owned by the plaintiffs, that the defendants have infringed Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 14, 15, 16, 17, 18 and 21 of the patent, and that plaintiffs are entitled to a permanent injunction against the defendants and an accounting.

In what follows are set forth my conclusions on the fundamental questions involved.

### I. The Claim of Lack of Invention.

The inventors describe the object of their invention in this manner:

"This invention relates to that type of tool employed in the well drilling art for cutting pipe in the well, and it can also be used for removal of cut-off sections of the pipe. Such a tool is in frequent demand for cutting the drill pipe or stem when it becomes stuck in the hole.

"The invention is an improvement over that disclosed in United States Letters Patent No. 1,277,600, issued to George Kammerer September 3, 1918. This application is a continuation in part of our earlier application Serial No. 584,277, filed August 25, 1922.

"An important object of the invention is to simplify the tool, reducing the number of working parts so as to make it less liable to get out of order when in use.

"Another object is to mount the cutter blades in a manner to permit of the tool

being inserted in a casing of small diameter relative to the diameter of the pipe to be cut within the casing.

"Another object is to provide for holding of the cutter blade actuating member in retracted position and for release thereof by upward motion of the tool body.

"Another object is to make provision for automatic and semi-automatic feeding of the cutter blades to the pipe or stem being cut.

"Another object is to provide for cutting of the pipe at any desired point without the necessity of co-action between the tool and the pipe collar or coupling." (Letters Patent No. 1,625,391, Page 1, Lines 1–34).

The devices accused have, by agreement of the parties, been limited to three, represented in the record by (1) the model, which is Plaintiff's Exhibit 10, the drawings for which are Defendants' Exhibit E, (2) Defendants' Exhibit C and (3) Defendants' Exhibit D.

The plaintiffs have charged infringement of all the claims of the Reilly-Stone patent except Claims 10, 11, 13, 19 and 20.

From the claims, the plaintiffs have chosen more specifically as a basis for proving infringement or as typical of the remainder of the claims charged to have been infringed, Claims 1, 12 and 21, which read:

"1. A tool of the class described comprising relatively movable members, pivoted cutter blades oscillatable from collapsed position into cutting position by relative movement between the members, yieldable arms on one of the members engageable with a shoulder on the pipe that is to be cut, and means connected with the other member to move said other member.

"2. A tool of the class described comprising a tubular body, means to rotate and raise the tubular body, a cutter blade movable mounted in the tubular body and adapted to lie retracted approximately longitudinally of the body, and means including a spring operable by upward movement of the tubular body to move the cutter blade from retracted position to cutting position, the expansion of the spring thereafter operating as the sole power to feed the cutter blade inwardly.

"21. A tool of the class described comprising relatively movable members, a cutter blade movably mounted in one of said members and adapted to lie retracted ap-proximately longitudinally thereof and to be engaged by the other member, and means including a spring operable by relative movement between said members to move the cutter blade from retracted position to cutting position, the spring thereafter operating to feed the cutter blade inwardly."

To each of the accused devices, the plaintiffs have sought to apply some of or all these typical claims, thus applying Claims 1, 12, 21 to Device 1 (Exhibit E), Claims 1, and 21 to Device 2 (Exhibit C) and Claims 1 and 21 to Device 3 (Exhibit D).

In their challenge to the validity of the patents and of the claims charged to have been infringed, and especially of the claims chosen as typical, the defendants insist that the elements of the combination in the patent in suit are old in the art and do not rise to invention over the prior art. To this is added the very familiar claim that whatever the deviation from the prior art is merely such as could have occurred to any mechanic skilled in the art.

A consideration of the testimony given in court, a study of the art and its history, a re-examination of the physical exhibits before the court, and of their methods of operation, lead to the conclusion that, while the elements of the combination may be old in the art, there is nothing in the prior art akin to the manner in which they are combined in this patent in order to produce a better result,—that is, a tool which, with great commercial success over a long period of years, achieved results not heretofore attainable by any prior device known to the art. This is invention over the prior art. Webster Loom Co. v. Higgins, 1881, 105 U.S. 580, 592, 26 L.Ed. 1117; Atlantic Refining Co. v. James B. Berry Sons Co., Inc., 3 Cir., 1939, 106 F.2d 644, 650; Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 6 Cir., 1939, 106 F.2d 554, 557; Amdur on Patents, 1935, p. 97.

The correctness of this conclusion is attested to by the chief expert of the defendants, Glen Bowlus, who, in answer to a series of questions propounded to him at the beginning of his cross examination, stated definitely that the chief elements of the combination, that of the pivoted cutters 11, the feed ring 15, the spring 21, the shear pin 28 and the overshot members 22 of the patent in suit, were not to be found in any of the long list of patents

which have been pleaded either as anticipation or offered as prior art and which he had analyzed.[1]

He applied the same conclusion to the Kammerer patent, Letters Patent No. 1,-277,600, issued September 3, 1917, (Transscript, Volume 6, pp. 569–572) of which the patent in suit was an improvement.

It is true that the same expert claimed, and counsel for the defendants have argued, that, while these elements are not found in the same combination in prior patents, each of them can be found in one or another of the patents in the rich prior art in the field of tools for cutting and removing pipe from oil wells. But this fact does not stand in the way of validity.

For, it is a fundamental principle of the law of patents, declared by the Supreme Court in a leading case, dating back to 1878, that the separate presence of the elements of a combination in three or four other patents in the prior art does not preclude a finding of invention when these elements are so combined as to produce a new or better result. The case to which I refer is Bates v. Coe, 1878, 98 U.S. 31, 48, 25 L.Ed. 68, where the court says: "Where the thing patented is an entirety, consisting of a single device or combination of old elements, incapable of division or separate use, the respondent cannot escape the charge of infringement by alleging or proving that a part of the entire thing is found in one prior patent or printed publication or machine, and another part in another prior exhibit, and still another part in a third one, and from the three or any greater number of such exhibits draw the conclusion that the patentee is not the original and first inventor of the patented improvement."

To the same effect are Brinkerhoff v. Aloe, 1892, 146 U.S. 515, 13 S.Ct. 221, 36 L.Ed. 1068; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 439, et seq., 31 S.Ct. 444, 55 L.Ed. 527; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 1901, 106 F. 693, 706, 707; Emerson Electric Mfg. Co. v. Van Nort Bros. Electric Co., C.C.E.D.Mo.1902, 116 F. 974; Craft-Stone, Inc., v. Zenitherm Co., Inc., 3 Cir., 1927, 22 F.2d 401, 403; Electrons, Inc., v. Coe, 1938, 69 App.D.C. 181, 99 F.2d 414, 422, 423; Atlantic Refining Co. v. James B. Berry Sons Co., 3 Cir., 1939, 106 F.2d 644, 650.

---

[1] These were:

| Patent to: | Number: | Patented: | | |
|---|---|---|---|---|
| Luther | 111,221 | January | 24, | 1871 |
| Lawrence et al. | 126,403 | May | 7, | 1872 |
| Douglas | 274,740 | March | 27, | 1883 |
| Palm | 543,265 | July | 3, | 1895 |
| Kellogg | 657,777 | September | 11, | 1900 |
| Eastwood et al. | 682,180 | " | 10, | 1901 |
| Roatch | 819,598 | May | 1, | 1906 |
| Cushing | 935,467 | September | 28, | 1909 |
| Spang | 969,755 | " | 6, | 1910 |
| Kammerer et al. | 995,875 | June | 20, | 1911 |
| McKee | 1,056,197 | March | 18, | 1913 |
| Nelson | 1,138,395 | May | 4, | 1915 |
| Driscoll | 1,253,015 | January | 8, | 1918 |
| Kammerer | 1,277,600 | September | 3, | 1918 |
| Carmichael | 1,324,303 | December | 9, | 1919 |
| Beatty | 1,328,940 | January | 27, | 1920 |
| Hill | 1,338,773 | May | 4, | 1920 |
| Lonsdale | 1,403,612 | January | 17, | 1922 |
| Hinderliter | 1,433,722 | October | 31, | 1922 |
| Jones et al. | 1,454,819 | May | 8, | 1923 |
| Plante | 1,458,118 | June | 5, | 1923 |
| Segelhorst | 1,535,348 | April | 28, | 1925 |
| Segelhorst | 1,599,067 | September | 7, | 1926 |
| Kammerer | 1,625,414 | April | 19, | 1927 |
| Segelhorst | 1,767,018 | June | 24, | 1930 |

## II. The Claim of Absence of Infringement.

As it is not my aim to do other than indicate, in a very general way, the conclusions reached, it is unnecessary to go fully into the bases for the defendants' denial of infringement. The background of the defendant, Ira J. McCullough, shows the acquisition of knowledge in the art in the employ of one of the plaintiffs, the Baash-Ross Tool Company. The device manufactured is, in all respects, similar to the device of the plaintiffs.

In fact, the defendants seem to stress chiefly the fact that the device of the plaintiffs offered in evidence is not the device they manufacture. This is immaterial. For the question of infringement does not turn around the proposition whether an accused device infringes another device, but whether an accused device infringes the claims of the Letters Patent which the patentee's device seeks to embody. So if it be conceded that sufficient deviation exists between the accused device and the device which the plaintiff has manufactured, this would not absolve the defendants. For if the accused device infringes the claims in suit, it matters not that the device which the plaintiffs have manufactured and sold is not constructed in accordance with the orthodox teachings of the patent in suit. The defendants themselves practically conceded as much. For they sought to show, by their testimony, not only that the accused device differed from the device manufactured for sale by the plaintiffs, but that the patent in suit taught only the method of construction and operation adopted by the plaintiffs. The chief differences between the plaintiff's device and those of the defendants, as stated by counsel for defendants in their argument, lay in the fact that the device manufactured by the plaintiff does not have a spring precompressed in a shop operation and that it must be pulled up against the collar of the pipe to become operable.

It may well be that Fig. 1 of the patent in suit does not show a precompressed spring. Nonetheless, that is not decisive. The drawings are merely explanative of the patentee's contemporaneous impression of a device embodying the invention. If we look at the specification and the claims of the patent in suit, we find that they clearly provide for the expansion of the spring, which, of course, could not be done unless the tool had been precompressed in a shop operation and afterwards released during the operations in the well. Reference is especially made to Lines 24 to 30 of Page 1, already reproduced, Lines 16 to 26, of Page 3,[2] of the specifications and to Claims 12 and 21, both of which give as an element of the combination "the expansion of the spring, thereafter operating as the sole power to feed the cutter blade inwardly", (as in Claim 12) and "the spring thereafter operating to feed the cutter blade inwardly" (as in Claim 21). Much stress is laid upon the fact that the device manufactured by the defendants could not be compressed during the operations in the well. But, as the question is not whether the accused device infringes the manufactured device, but whether the accused device is built according to the teachings of the patent, it is plain to me that the patent read as a whole (as we are bidden by legal command to do) teaches two methods of operation,—one of which calls for precompression of one of the elements, the spring, as in the accused device. The device manufactured and sold by the plaintiffs, by reason of the absence of precompression of the spring, operates differently from the accused device. But the model introduced by the plaintiffs and constructed according to the second method of operation taught by the patent, contains such a precompressed spring and was demonstrated in the courtroom to be capable of operating as the defendants' devices,—that is, away from the collar of the pipe. And all that is necessary to make the device of the plaintiffs operate in like manner is to precompress this spring in the shop. Identity of operation, in practice, would then exist.[3]

---

[2] "The expansive force of the spring 21 may be increased at any time, if found desirable, by further raising of the body 13 to compress the spring to a greater degree between the member 15 and the bearing member 19. When the cutting of the drill stem is being effected, the cutter blades 11 will not be forced to take too deep a cut, and thus endanger breaking of the cutter blades, since the spring 21 will yield as the body 13 is raised." (Page 8, Lines 16 to 26, Letters Patent No. 1,625,391.)

[3] For a better understanding of the description here given of the patent in suit and of the operation of one of the accused devices represented by the model, I shall attach to the copies of this opinion released for publication as Illustration 1, the first sheet of drawings of the

April 19, 1927.

J. B. REILLY ET AL

1,625,391

TOOL FOR CUTTING AND REMOVING PIPE FROM WELLS

Filed July 19, 1923    4 Sheets—Sheet 1

patent in suit and as Illustration 2, a diagram prepared by the defendants and embodying their idea of the operation of the McCullough device.

ILLUSTRATION 2

An inventor may limit his invention to one method of construction or one specific use, and thereby throw everything else into public domain. McClain v. Ortmayer, 1891, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800; Motion Pictures Patents Co. v. Independent Moving Pictures Co., 2 Cir., 1912, 200 F. 411; Bankers' Utilities Co., Inc., v. Pacific National Bank, 9 Cir., 1927, 18 F.2d 16; and see my opinions in Joyce, Inc., v. Solnit, D.C.Cal.1940, 29 F.Supp. 787; Joyce, Inc., v. Fern Shoe Co., D.C.Cal.1940, 32 F.Supp. 401.

Where, however, there is no dedication to public use, and a patent teaches explicitly several methods of operation, the inventor does not lose the right to any of them by merely constructing a device which operates in one of the ways only. See Western Electric Co. v. La Rue, 1891, 139 U.S. 601, 606, 11 S.Ct. 670, 35 L.Ed. 294; Miller v. Eagle Mfg. Co., 1894; 151

U.S. 186, 201, 14 S.Ct. 310, 38 L.Ed. 121; Roberts v. Reyer, 1875, 91 U.S. 150, 157, 23 L.Ed. 267; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 1901, 106 F. 693, 709; Kohler v. Cline Electric Mfg. Co., D.C.Ill.1927, 28 F.2d 405; Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir., 1928, 27 F.2d 823, 828; Deitel v. La Minuette Trading Co., 2 Cir., 1930, 37 F.2d 41, 42; Reinharts, Inc., v. Caterpillar Tractor Co., 9 Cir., 1936, 85 F.2d 628, 632. And one who copies the device cannot avoid the charge ,of infringement by pointing to the exclusive use of one method. The other methods do not go into the public domain by non-use and cannot be appropriated by others with impunity.

This is the situation here. The defendant, Ira J. McCullough, having learned the art in the employ of one of the plaintiffs, who manufactured this device for many years, both under the patent in suit and the Kammerer patents, cannot escape the penalties of infringement by manufacturing, according to the teachings of the patent, a device which, while containing all the elements of the claims in suit, operates in a manner which, although not used by the plaintiffs in their device, is claimed and taught by the patent.

Hence the ruling made.